**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **11-03985-hb**

**ORDER ON MOTION TO SELL FREE AND CLEAR OF LIENS**

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/19/2015**



US Bankruptcy Judge
District of South Carolina

Entered: 02/19/2015

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 11-03985-HB |
| | Chapter 7 |
| Christopher Scott Childers and Christie Nicole Childers, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** came before the Court for hearing on the Notice and Application for Sale of Property Free and Clear of Liens ("Sale Notice") filed by the Trustee, Robert F. Anderson (the "Chapter 7 Trustee"). Creditor Freedom Mortgage Corporation ("Freedom") and Christopher Scott Childers and Christie Nicole Childers (collectively, "Debtors") filed responses to the sale.

## FACTS

The relevant facts of this matter are not disputed. After a voluntary conversion of this bankruptcy case from Chapter 13 to Chapter 7, the Chapter 7 Trustee avoided a consensual mortgage on Debtors' residence executed pre-petition by Debtors in favor of Freedom and preserved the $97,821.27 lien position for the benefit of the estate (the "preserved lien").[1] After years of marketing the residence, located at 414 Rhea Road, York, South Carolina (the "Property"), without success, the Chapter 7 Trustee filed this Sale Notice seeking approval of a sale at public auction free and clear of liens.[2]

The Chapter 7 Trustee will consent to the sale as the holder of the lien in order to consummate the transaction. The estate, through the preserved lien held by the Chapter 7

---

[1] *Anderson v. Freedom Mortg. Corp.*, Adv. Pro. 12-80255-hb (Bankr. D.S.C., filed Nov. 26, 2012). The mortgage was not recorded on the public record. The amount of the lien position is based on the proof of claim filed by Freedom indicating the principal amount of the debt owed by Debtors at the time of filing their petition for Chapter 13 relief.

[2] Dkt. No. 94; *see also* Dkt. No. 91 (denying the Chapter 7 Trustee's first attempt to sell the Property pursuant to different terms).

Trustee, would receive the sales proceeds for distribution to unsecured creditors. Debtors claim a homestead exemption in the Property and the parties agree that it is inferior in priority to the preserved lien.[3] The Chapter 7 Trustee conceded that all costs of the sale and administrative costs of the estate must be paid from the first $97,821.27 or less. He also conceded that, even though he is the holder of the preserved lien on behalf of the estate, he is not the holder of the note and mortgage and, therefore, has no contractual basis for collecting any interest or additional amounts pursuant to the note and mortgage. Likewise, he also admitted that as the holder of the preserved lien only, he has no contractual right to foreclose on the mortgage contract even though Debtors have breached that contract post-petition by failing to make payments pursuant to the note and mortgage and have made no arrangements to satisfy the estate's preserved lien. Debtors objected to the Sale Notice, arguing that applicable law does not allow the Chapter 7 Trustee to sell the Property under these circumstances.[4]

Freedom filed a timely response, making a counteroffer to purchase the Property for $60,000.00 by private sale.[5] Freedom, as the primary unsecured creditor in this case, would receive most, but not all, of any distribution made by the Chapter 7 Trustee on account of its unsecured claim. At the hearing, Freedom introduced into evidence an appraisal indicating a current market value of the Property of $80,000.00. There were no competing appraisals or evidence of a higher current value of the Property. The Chapter 7 Trustee proffered that it was in

---

[3] *See* 11 U.S.C. § 522(g)
    Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if–
        (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
         (B) the debtor did not conceal such property . . .
The parties agree that Debtors' exemption does not attach to any property recovered by the Chapter 7 Trustee pursuant to § 551.

[4] Dkt. No. 96.

[5] Dkt. No. 98.

2

the best interests of the estate to accept Freedom's offer and sell the Property for $60,000.00. This offer guarantees a reasonable price, avoids costs associated with paying the auctioneer's commission, and is the highest offer received after sufficient marketing efforts over an extensive period of time.

An additional lien was placed on the Property by Debtors in favor of Guardian Fidelity Mortgage, Inc. ("Guardian") after the case was converted to Chapter 7 and shortly before the Sale Notice was filed.[6] The Chapter 7 Trustee and Freedom did not learn of this lien until shortly before the hearing. To consummate a sale of the Property to Freedom for the $60,000 purchase price, the Guardian lien must be removed.

## DISCUSSION

Debtors rely on *In re Traverse*, 753 F.3d 19 (1st Cir. 2014), *cert. denied sub nom. DeGiacomo v. Traverse*, 135 S. Ct. 459 (2014), to support their argument that the Chapter 7 Trustee does not have the ability to sell the Property under the circumstances of this case. In *Traverse*, the Chapter 7 trustee avoided an unrecorded mortgage and preserved the lien pursuant to §§ 544 and 551 and then sought to sell the property (the debtor's residence) for the benefit of the bankruptcy estate pursuant to his powers under § 363. *Id.*[7] The *Traverse* court denied the trustee's request, reasoning that the preserved mortgage did not create equity for the bankruptcy estate to justify a sale of the property and "[i]t is this equity for unsecured creditors that

---

[6] *See Anderson v. Childers*, Adv. Pro. No. 14-80139-hb (Bankr. D.S.C. filed Dec. 18, 2014). After the hearing on the Sale Notice, an Order was entered on January 29, 2015, revoking Debtors' discharge. *Id.* at Dkt. No. 7.

[7] Traverse executed two separate mortgages on her home in favor of Washington Mutual Bank, which JP Morgan Chase later acquired, and Citibank. 753 F.3d at 23. The mortgage with Washington Mutual Bank was not recorded by either Washington Mutual Bank or JP Morgan. *Id.* Traverse filed for bankruptcy and on her schedules listed JP Morgan's claim in the amount of $185,777.30 and Citibank's mortgage in the amount of $29,431.04, valued her home in the amount of $223,500.00, and claimed a homestead exemption in the amount of up to $500,000.00. Based on these amounts, there was $8,291.66 in equity in the property to which the debtor's homestead exemption could attach. Under the Massachusetts Homestead Act, a debtor is afforded an automatic exemption of up to $125,000 in his or her principal residence, and up to $500,000 if the debtor files a declaration of homestead. Mass. Gen. Laws ch. 188 §§ 1, 5. The court in that case also noted that Traverse was current on her mortgage payments despite the avoidance.

3

authorizes a trustee to liquidate the property in the first place, as the trustee should not exercise his § 363 powers for the benefit of secured creditors alone." *Id.* at 29 (relying in part on the U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8–20 (2002)).

While it is true "[p]reservation [under § 551] gives the bankruptcy estate an exclusive interest in the avoided lien, but it does not give the estate any current ownership interest in the underlying asset . . ." *id.* at 27, this does not override other provisions of the Bankruptcy Code that separately and clearly grant the Chapter 7 Trustee rights in property of the estate and the obligation to liquidate such property. Section 541 provides that "all legal and equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Pursuant to § 704(a), the Chapter 7 Trustee, must "collect and reduce to money the property of the estate for which such trustee serves . . . with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).

There is no dispute that the real estate the Chapter 7 Trustee wishes to sell is property of the estate. Sections 544 and 551 operate separately and distinctly from § 363 and neither § 544 nor § 551 provides a basis for or a prohibition against the Chapter 7 Trustee's ability to sell. If the Chapter 7 Trustee meets the requirements of § 363, the sale of property of the estate should be approved regardless of any lien avoidance.

## 11 U.S.C. § 363(b)(1)

There is no requirement under § 363(b) or § 704(a) that there be equity in property of the estate above any existing liens or interests before the Court can approve a sale. Section 363(b)(1) provides "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). As discussed

4

above, there is no dispute here that the real property to be sold is included within the definition of property of the estate.

From a pragmatic standpoint, equity is normally necessary to realize a distribution to unsecured creditors and to justify a sale, and courts generally decline approval when a secured creditor is the only or a primary beneficiary of the sale. *See In re Dockweiler*, BAP No. AK-13-1157, 2014 WL 1273695, at *4 (B.A.P. 9th Cir. Mar. 28, 2014) ("A chapter 7 trustee may sell property under § 363, but such a sale is generally for the benefit of unsecured creditors and not for the benefit of secured creditors of the debtor.") (citations omitted); *In re Silver*, 338 B.R. 277, 281-82 (Bankr. E.D. Va. 2004) (denying the Chapter 7 trustee's motion to sell free and clear because the liens on the property, which were held by secured creditors and not avoided and preserved for the benefit of the estate, exceeded the value of the property, the estate would not benefit from the sale because the property could not be sold for a price high enough to satisfy all the liens, the only parties who would benefit from the sale were the most senior lienholders, and the carve-out from the sale price reserved for lien creditors whose claims become unsecured would result in those creditors receiving next to nothing) (citations omitted). In the instant matter, **_no_** secured creditor benefits from this sale. Rather, there will be a significant benefit to unsecured creditors – despite a lack of equity in the Property itself – due to the fact that the Chapter 7 Trustee is the holder of the preserved lien. Labeling the Chapter 7 Trustee as a "secured creditor" under these circumstances in order to defeat the sale because he now occupies the preserved lien position is incongruous.

In order for the Chapter 7 Trustee's Sale Notice to be approved, he must meet the business judgment test.

> In determining whether to approve a sale proposed by a trustee under [§ 363(b)(1)], courts generally apply a business judgment test. Although the

5

>Trustee's business judgment is to be given "great judicial deference," the Court must scrutinize whether the Trustee has fulfilled his duty to "maximize the value obtained from a sale, particularly in liquidation cases."

*In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) (quoting *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)); *see also In re Shipman*, 344 B.R. 493, 495 (Bankr. N.D.W. Va. 2006) ("[A Chapter 7] trustee's decision to sell a debtor's real property outside the ordinary course of business under 11 U.S.C. § 363(b) is reviewed by the court for compliance with the business judgment rule, i.e., the court must ensure that the trustee is making a decision that is not based on self interest or self dealing, and that the decision to sell is made on an informed basis, in good faith, and in the honest belief that the sale is in the estate's best interest."). To determine whether the business judgment test is satisfied, a sale is generally reviewed against four requirements: "(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor [or trustee] has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *Shipman*, 344 B.R. at 495. "An exercise of such business judgment includes disposition of property if the trustee determines that such disposition is in the best interest of the estate." *In re Lakeside Dev., LLC*, C/A No. 11-05211-DD, 2012 WL 619071, at *4 (Bankr. D.S.C. Feb. 24, 2012);

>The Chapter 7 Trustee has demonstrated a sound business reason for the sale because it will result in a significant distribution to unsecured creditors from payment to the estate on account of the preserved lien. There are no allegations of bad faith or self-dealing. Debtors did not object to the notice given or the method of sale. Moreover, Debtors did not specifically object to Freedom's purchase price or the identity of the purchaser, and Debtors did not question Freedom's good faith. Nevertheless, the evidence indicates that the $60,000 purchase price is fair and reasonable compared to the current value of $80,000. *See In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 119 (4th Cir. 1994) (discussing § 363(m) and finding that "[g]enerally, a buyer at a

6

bankruptcy sale purchases for value by payment of 75% of the appraised value of the asset." (citing *Willemain v. Kivitz (In re Willemain)*, 764 F.2d 1019, 1023 (4th Cir. 1984))); *see also In re Oakwood Country Club, Inc.*, C/A No. 10-60246-LYN, 2010 WL 4916436, at *4-5 (Bankr. W.D. Va. Apr. 6, 2010) ("In order to determine whether the sales price is fair and reasonable, one must know the market value of what is being sold and the price that is being paid . . ."). Based on the foregoing, the Court concludes that the Chapter 7 Trustee has presented a sufficient showing that the sale of the Property to Freedom for $60,000 meets the requirements of § 363(b)(1).

## 11 U.S.C. § 363(f)

The Court's analysis does not stop here, however, because the Chapter 7 Trustee has requested authority to transfer a clear title to the Property by a sale free and clear of all liens and interests. To take this next step, he must satisfy § 363(f), which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Debtors claim the Property cannot be sold free and clear of their exemption. Therefore, the Court must determine whether Debtors' claimed homestead exemption constitutes an interest

7

in the Property that must be considered pursuant to § 363(f) and, if so, whether the Chapter 7 Trustee has met one of the requirements thereof to sell free and clear.

Pursuant to 11 U.S.C. § 522(b)(2) and South Carolina law, a debtor may exempt "from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding . . . [t]he debtor's *aggregate interest*, not to exceed fifty thousand dollars *in value*, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . ." S.C. Code Ann. § 15–41–30(A)(1) (emphasis added).[8] One purpose behind the homestead exemption in South Carolina is to keep individuals that have filed bankruptcy in their homes. *Id.*[9] In support of this purpose, authorities instruct the Court to construe the homestead exemption liberally in favor of Debtors. *In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000) ("Generally, statutes creating debtors' exemptions must be construed liberally in favor of the debtor and the exemption."); *In re Shaffer*, 78 B.R. 783, 784 (Bankr. D.S.C. 1987) (finding that "exemptions are to be construed liberally in favor of the debtor") (internal citations omitted); *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989).

There is no instructive South Carolina case law interpreting the meaning of "aggregate interest" as set forth in the homestead exemption, S.C. Code Ann. § 15–41–30(A)(1). Therefore, the Court looks to interpretations of "aggregate interest" under § 522(d)(1) to determine the nature of Debtors' interest. *In re Scotti*, 456 B.R. 760, 762 (Bankr. D.S.C. 2011) ("The South Carolina homestead exemption statute is based on the federal exemption statute, section

---

[8] South Carolina exemptions changed substantially in 2006 when the maximum allowable amount of the homestead exemption was increased from $5,000 to $50,000 per individual. Home Security Act, 2006 S.C. Act 300 (S.B. No. 862). Exemption amounts are adjusted annually to take into account inflation and increases in the cost of living.

[9] South Carolina courts have recognized the importance and purpose of homestead exemption laws many years prior to the enactment of the Home Security Act. *See Ex parte Cothran*, 128 S.C. 122, 121 S.E. 556, 558 (1924) ("The purpose of [homestead] laws, . . . was not to create any new estate, or to invest estates already existing with any new qualities, or to subject them to any restrictions, but to secure a right of exemption by forbidding the use of the process of the court to sell certain property for the payment of debts.").

522(d)(1)."). Cases interpreting § 522(d)(1) have held that in order for a debtor to have an "aggregate interest" of a certain amount in real property the debtor uses as a primary residence that can be claimed as exempt from the bankruptcy estate, there must be equity in the property to which the claimed exemption can attach. *See In re Messina*, 687 F.3d 74, 82 (3d Cir. 2012) (finding there was no equity in the property to exempt under § 522(d)(1) at the time the debtors filed for bankruptcy because the combination of the two mortgages – one of which was avoided by the Chapter 7 trustee under § 544 – was greater than the value of the property itself); *In re Baldridge*, C/A No. 12-14612, 2013 WL 1759365, at *1 (E.D. Mich. Apr. 24, 2013) *aff'd*, 553 F. App'x 598 (6th Cir. 2014) *cert. denied sub nom. Baldridge v. Ellmann*, 135 S. Ct. 113, 190 L. Ed.2d 42 (2014) ("Exemptions are subordinate to a secured creditor's lien on real property. Consequently, if the amount of secured debt exceeds the fair market value of the property such that there is no equity, the exemption is lost." (internal citations omitted)); *In re Giarrizzo*, 128 B.R. 321, 322 (Bankr. D. Mass. 1991) (noting a "debtor's aggregate *interest* in value" under § 522(d)(1) "has been construed to refer to the debtor's equity interest after deduction of mortgage debt." (emphasis in original) (citations omitted)); *cf. In re Parsons*, C/A No. 12-12649-TMD, 2014 WL 7145547, at *3-4 (W.D. Tex. Dec. 12, 2014) (finding that equity in the property was not required under Texas' homestead exemption because, unlike statutes that "limit protection to the debtors' interest in property up to a specified dollar amount . . . the Texas homestead exemption extends to the property itself regardless of value.").

Likewise, the Fourth Circuit's interpretation of North Carolina's homestead exemption in *Reeves v. Callaway*, 546 F. App'x 235 (4th Cir. 2013), is instructive. Like South Carolina, North Carolina's homestead exemption states that a debtor may exempt "the debtor's **aggregate interest**, not to exceed thirty-five thousand dollars ($35,000) **in value**, in real property or

9

personal property that the debtor or a dependent of the debtor uses as a residence . . ." N.C. Gen. State. 1C-1601(a)(1) (emphasis added). The North Carolina homestead exemption must also "be liberally construed in favor of the debtor . . ." *In re Mims*, 49 B.R. 283, 286 (Bankr. E.D.N.C. 1985) (citations omitted).

In *Reeves*, the Fourth Circuit reiterated that there is a "distinction between exempting an asset itself from the bankruptcy estate and exempting an interest in such asset from the bankruptcy estate," which was made clear by the Supreme Court in *Schwab v. Reilly*, 560 U.S. 770, 130 S. Ct. 2652, 177 L. Ed.2d 234 (2010). 546 F. App'x 235 at 239. In order to constitute an interest for purposes presented here, there must be equity in the asset if the applicable exemption is limited to an interest in such property and capped at a certain amount. On the other hand, if the property itself is exempt, no equity is necessary for the claimed exemption to constitute an interest in the property – the trustee has no ability to sell property that, in itself, is exempt from the estate. *See Parsons*, 2014 WL 7145547 at *4. Because North Carolina's homestead exemption pertains to a limited interest in real property up to a certain amount (e.g., the debtor's aggregate interest up to $35,000 in value), the Fourth Circuit found that equity in the real property was required for a debtor to claim such exemption under the North Carolina statute. *Reeves*, 546 F. App'x at 237, 239-40. Moreover, because the homestead in *Reeves* was "not subject to an unlimited or in-kind exemption, title to [the homestead] remained with the bankruptcy estate pursuant to 11 U.S.C. § 541." *Id.* at 241 (citations omitted).

Like § 522(d)(1) and North Carolina's homestead exemption, South Carolina's homestead exemption is limited to the debtors' aggregate interest in the real property up to a certain amount, rather than the real property itself. Accordingly, under *Reeves* and interpretations of § 522(d)(1), the Court concludes that title to the Property remains with the

10

bankruptcy estate and South Carolina's homestead exemption requires equity in the Property over and above the consensual liens in order for Debtors to qualify as interest holders under § 363(f).[10] The court's reasoning in *Reeves* appears directly applicable to the instant matter and it is improbable that when faced with an almost identical statute, the Fourth Circuit would decide the matter differently.[11]

It is undisputed that: the Property has a current appraisal value of $80,000; the highest offer to purchase the Property to date is $60,000; there is no indication that a public auction would realize a higher purchase price for the Property; the Chapter 7 Trustee holds the preserved lien for the benefit of the estate in the amount of $97,821.27; and the Debtors' homestead exemption is second in priority. On these facts, the claimed exemption is not an interest that can impede the Chapter 7 Trustee's sale of the Property free and clear of liens to Freedom for $60,000.[12]

## CONCLUSION

The Chapter 7 Trustee has met his burden of showing his proposed sale of the Property complies with § 363(b) and (f),[13] and the Chapter 7 Trustee's request to sell to Freedom free and clear of liens for $60,000 must be approved. A separate judgment will be entered.

---

[10] The Court notes that this holding is narrow in scope and application and does not affect the current practice for avoiding liens under § 522(f). *See* 11 U.S.C. § 522(f)(2)(A) (providing an arithmetic test to determine whether a lien impairs an exemption, which takes into account "the amount of the exemption that the debtor ***could claim if there were no liens on the property***." (emphasis added)); *see also Owen v. Owen*, 500 U.S. 305, 310-11, 111 S. Ct. 1833, 1836-37, 114 L. Ed.2d 350 (1991) ("To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself." (emphasis in original)).

[11] Although of great assistance here, the Fourth Circuit's holding in *Reeves* is not controlling precedent due to the fact that it was not published in the Federal Reporter.

[12] The Chapter 7 Trustee requested that the Property be sold at public auction as a back-up sale should the sale to Freedom not close. Should this course of action prove necessary, the Chapter 7 Trustee may request a hearing for further consideration by the Court.

[13] The only lienholder, the estate, consents to the Sale Notice through the Chapter 7 Trustee pursuant to § 363(f)(2).